■ MARIA QUILES et al., Respondents, v TERM EQUITIES et al., Appellants, et al., Defendant. [802 NYS2d 679]—

Order, Supreme Court, New York County (Edward Lehner, J.), entered August 19, 2004, which granted plaintiffs' cross motion for summary judgment on their cause of action for wrongful eviction, unanimously reversed, on the law, without costs, the motion denied and the matter remanded for further proceedings. Appeal from order, same court and Justice, entered February 1, 2005, which denied defendants' motion for reargument, unanimously dismissed, without costs, as taken from a nonappealable paper.

On October 29, 1998, an apartment building owned by defendants at 82 West 105th Street was damaged by fire. By peremptory vacate order, the New York City Department of Buildings ordered all occupants of the building to vacate the premises because of "imminent danger to the safety and life of the occupants" as a result of a "metal cornice and parapet wall partially collapsed and damaged" and the "[r]emainder in danger of falling on the sidewalk, creating a hazardous condition for people entering and leaving the building." On February 3, 1999, over defendants' opposition, the State Division of Housing and Community Renewal (DHCR) issued orders reducing the rent for plaintiffs, who were the tenants of six rent-regulated apartments in the building, to $1 per month each, and entitling them, upon continued payment of the reduced rent, to be restored to occupancy of the apartments.

Defendants filed petitions for administrative review (PAR), seeking modification of the orders to the extent of providing that defendants were under no obligation to rebuild the building, that the $1 order preserved each tenant's right to return to his or her former apartment only if the apartment was restored to its former state, and that if the building was gutted and/or new apartments constructed, the $1 order did not give any tenant the right to a new apartment in the building. Defendants argued that by so modifying the instant orders the DHCR would be reconfirming the opinion it expressed in an advisory opinion letter issued on April 21, 1998 in response to their inquiry about another building owned by them.

By order issued August 13, 1999, the Deputy Commissioner of the DHCR denied the petition and affirmed the February 3, 1999 orders on the ground that the hypothetical situation of the owner's determination at a future time to raze the fire-damaged building and build a new one was not before the Rent Administrator and therefore was properly not addressed in those orders. The Deputy Commissioner noted parenthetically that the April 21, 1998 advisory opinion letter was not applicable to the instant situation, because it referred to a building that had burned to

the ground, while the instant building, though uninhabitable, remained standing. Indeed, as the Deputy Commissioner pointed out, the advisory opinion letter cautioned that "[t]he razing of a fire-damaged building resulting from an economic decision of the owner to do so would change our opinion completely."

By letter dated September 1, 1999, the DHCR denied defendants' request for reconsideration on the ground that there was no legal basis, as set forth in Rent Stabilization Code (9 NYCRR) § 2529.9, for reopening the administrative appeal. However, the DHCR advised that its denial "does not signify . . . that the owner may not successfully raise any of these issues in another agency or court proceeding." The letter stated that the "DHCR has no authority to convey upon a tenant an unqualified right to be restored to possession where other principles of landlord-tenant law, as enunciated by the courts, afford an owner, under certain circumstances, the right not to restore a tenant to possession of an apartment or a building." Moreover, it noted that the $1 rent order "does not explicitly direct the owner to restore the tenant to possession of the apartment or to a newly created apartment, and that the language used by the Rent Administrator cannot be read to supersede other principles of landlord-tenant law, as discussed above."

On February 14, 2000, defendants applied to the City Department of Buildings for permission "to renovate existing five story apt. bldg.," increasing the number of apartments from 16 to 39. Five months later, in July 2000, they informed plaintiffs in writing that they did not intend to restore the apartments to their former state but instead would build a new building, and that they were under no legal obligation to offer a former tenant "a newly created apartment." Notwithstanding that the DHCR had found the April 21, 1998 advisory opinion letter inapplicable to the instant situation, defendants informed plaintiffs that their position was based on that advisory opinion. Defendants then proceeded to renovate the building.

Plaintiffs commenced this action alleging, inter alia, wrongful eviction, on which cause of action they subsequently cross-moved for summary judgment. Plaintiffs argued that defendants' right to rely on the advisory opinion was "without factual basis," because the building, while damaged by fire and water, remained wholly intact. Plaintiffs' evidentiary submissions included the affidavit of plaintiff Emilia Garcia, who averred that she was a tenant of a rent-stabilized apartment in the building, that after the fire, the stairs, hallways and apartments were still in place, and that her apartment had suffered mostly

water damage but was still intact. In opposition, defendants submitted, inter alia, an engineer's letter expressing the opinion that the building required a " 'gut' renovation" because of "substantial damage to the wood floor structure on the north side of the building from the second floor up" and major damage to the walls, ceilings and floor boards as well as to the plumbing, electrical and heating systems. Also before the court was the testimony of plaintiff Garcia at examination before trial. Garcia testified that after the fire, she was able to go upstairs to her apartment to retrieve her belongings, including a television set, a bed frame and an antique china cabinet.

However, in granting summary judgment to plaintiffs, the court did not address this conflicting evidence. Instead, the court found that the legal relationship among the parties was determined in the February 3, 1999 orders reducing plaintiffs' rent to $1 and directing that they be restored to possession upon reconstruction of their apartments, that that direction was binding upon the parties because no appeal had been taken from the PAR on which it had been affirmed, and that by denying plaintiffs' right to return to their apartments after the renovation of the building, in contravention of the DHCR's orders, defendants unlawfully evicted plaintiffs. The court also noted that, even if the building was demolished by the fire, plaintiffs' tenancies were not terminated because defendants did not apply for the requisite DHCR approval for terminating them.

A landlord may evict tenants protected by rent control or rent stabilization only on certain grounds specified in the Rent and Rehabilitation Law (Administrative Code of City of NY § 26-408 [a], [b]) and Rent Stabilization Code (9 NYCRR) §§ 2524.2, 2524.3. These grounds are categorized as either the tenant's wrongful acts, such as violating a substantial obligation of the tenancy (Administrative Code § 26-408 [a] [1]; Rent Stabilization Code [9 NYCRR] §§ 2524.1, 2524.3), or the landlord's purposes, such as a landlord's need of an apartment for his or her own personal use and occupancy (Administrative Code § 26-408 [b] [1]; Rent Stabilization Code [9 NYCRR] §§ 2524.4, 2524.5). Under the Rent and Rehabilitation Law, where an eviction is sought for the landlord's purposes, the landlord must obtain a certificate of eviction from the DHCR (Administrative Code § 26-408 [b]). Under both rent control and rent stabilization, the landlord must give written notice of the termination before the tenant may be evicted (NY City Rent and Eviction Regulations [9 NYCRR] § 2204.3; Rent Stabilization Code [9 NYCRR] § 2524.2).

Implicit in these protections is that the apartment from which

the landlord seeks to evict the tenant is in existence (*see e.g.* Administrative Code § 26-408 [b] [4] ["landlord seeks in good faith to recover possession of housing accommodations for the immediate purpose of demolishing them"]; Rent Stabilization Code [9 NYCRR] § 2524.5 [a] [2] [i] ["owner seeks to demolish the building"]). Indeed, the DHCR's April 21, 1998 advisory opinion letter states that where the entire building is burned to the ground, there is no " 'subject apartment' regarding which a tenant could be restored to occupancy," and that, assuming there has been no fraud or harassment and the fire was not caused by the owner or the owner's agent, the owner could construct a new residential building on the site without offering the former tenant an apartment therein. In other words, where the building is burned to the ground and the owner does not offer the former tenant an apartment in a new residential building constructed on the site, the tenant has not been evicted.

The DHCR declined defendants' request that it reconfirm this advisory opinion in the instant case, on the ground that the building, though uninhabitable after the fire, was still standing. However, based on its rulings, the parties agree that a building may be so damaged by fire, without being burned to the ground, that the owner is left with no real choice but to demolish it, and that in that case the owner is not obligated to offer apartments in the new building to the former tenants of the rent-stabilized and rent-controlled apartments no longer in existence. Thus, the question of whether the building was so damaged by the fire as to have been "effectively demolished" is critical to a determination of whether defendants unlawfully evicted plaintiffs. Upon review of the evidence on the motion, we find that a triable issue of fact was raised precluding summary judgment, and therefore remand the matter for further proceedings. Concur—Sullivan, J.P., Ellerin, Nardelli and Sweeny, JJ.